## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

———————————————————————

|  |  |  |
|---|---|---|
| ECOLAB INC. and ECOLAB USA INC., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL CHEMICAL | ) | |
| CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | **INJUNCTIVE RELIEF REQUESTED** |
| Defendant. | ) | |

———————————————————————

### COMPLAINT

Come now the Plaintiffs, and for their Complaint against Defendant, state and allege as follows:

### PARTIES

1.     Plaintiff Ecolab Inc. is incorporated in the state of Delaware and has a principal place of business at Ecolab Global Headquarters, 1 Ecolab Place, St. Paul, Minnesota 55102.

2.     Plaintiff Ecolab USA Inc. is incorporated in the state of Delaware and has a principal place of business at Ecolab Global Headquarters, 1 Ecolab Place, St. Paul, Minnesota 55102. Ecolab Inc. and its subsidiary Ecolab USA Inc. are collectively referred to herein as "Ecolab."

3.      Ecolab is the global leader in water, hygiene, and energy technologies and services. Around the world, businesses in a variety of industries, including *inter alia* food and beverage processing, choose Ecolab products and services to keep their environment clean and safe, operate efficiently, and achieve sustainability goals. Among other solutions, Ecolab offers

hygiene and lubrication products and services to beverage bottling facilities to improve safety and efficiency.

4.      Defendant International Chemical Corp. ("ICC") is incorporated in the state of Florida, and has a principal place of business at 7654 Progress Circle, West Melbourne, Florida 32904.

5.      ICC is in the business of *inter alia* providing lubrication products and services to beverage bottling facilities.

## JURISDICTION AND VENUE

6.      This is a civil action for patent infringement, arising under the Acts of Congress relating to patents, 35 U.S.C. §§ 271 and 282-85; trademark infringement and unfair competition, arising under Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; breach of contract, arising under the common law of the State of Florida; deceptive and unfair trade practices, arising under Fla. Stat. §§ 501.201-213; and unfair competition, arising under the common law of the State of Florida.

7.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a), as well as 15 U.S.C. § 1121, and/or supplemental jurisdiction as stated in 28 U.S.C. § 1367, and/or upon principles of pendent and ancillary jurisdiction.

8.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

## FACTUAL BACKGROUND

**I.      Ecolab's prior suit against ICC and the resulting consent judgment**

9.      On August 13, 2010, Ecolab filed suit against ICC in this District, raising claims of (i) infringement of U.S. Patent No. 7,741,257 ("the '257 patent"); (2) infringement of U.S. Patent No. 7,745,381 ("the '381 patent"); (3) false advertising under 15 U.S.C. § 1125(a);

(4) trademark infringement; (5) federal unfair competition; (6) violations of the Florida

Deceptive and Unfair Practices Act; (7) false advertising in violation of Fla. Stat. § 817.41;

(8) unfair competition under Florida common law. A copy of the complaint initiating this prior

action, styled *Ecolab Inc. v. International Chemical Corporation*, No. 6:10-cv-01208-Orl-22GJK

(M.D. Fla), is attached hereto as **Exhibit A**.

10.    At the center of the parties' dispute was ICC's infringing use, sale, and provision

of a silicone-based dry lubricant, known as DRY TRAXX, to beverage bottling plants in

competition with Ecolab, who held multiple patents covering the use of such a lubricant. The

term "dry lubricant" refers to a lubricant composition that is applied on an intermittent basis to

conveyor surfaces, chains, or belts in beverage bottling plants with minimal water.

11.    Historically, bottling plants used "wet lubricants," which employed significant

amounts of water and were applied on a constant or nearly constant basis. Plants that used earlier

forms of dry lubricants had to employ certain types of equipment in order to apply them,

including brush systems that would spread the lubricant onto the conveyor surface or specialized

spray systems employing such things as sonication or high pressure.

12.    Ecolab and ICC litigated the prior case for more than a year before ultimately

reaching an agreement to resolve their dispute on certain terms. During that time, the parties

exchanged several rounds of written discovery; collected, reviewed, and produced relevant

documents; and took and defended at least nine depositions. ICC brought a motion to dismiss,

which was denied. Ecolab brought a motion to dismiss an inequitable conduct counterclaim,

which was pending at the time of settlement. By the time the parties reached settlement, the

parties were both well versed on the relative merits of their claims. ███████████

████████████████████████████████████████

███████████████████████████████████████████████████

███████████████ the court approved a consent judgment terminating the lawsuit and

imposing conditions on ICC's future conduct. A copy of the consent judgment approved by the

court is attached hereto as **Exhibit B**.

13.    Included in the consent judgment were provisions enjoining ICC from

(i) intermittently spraying, (ii) instructing customers to intermittently spray, or
(iii) continuing to sell product to any customer who is known to ICC to continue
intermittently spray[ing], after written notice to cease and desist, any ICC silicone
lubricant onto the container-contacting surface of the conveyor chain, . . . through
non-energized nozzles, for the life of the Asserted Patents.

14.    ████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

██████████████████████████

15.    ████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

16.    █████ the consent judgment ██████████████████████████████ enjoined

ICC from using any trademark or product name ending in the suffix –XX. ████████████

█████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████

communication, and/or electronic matter (including metadata and metatags in connection with any product or service.

The agreement also required that, within thirty (30) days of the effective date, ICC destroy materials displaying infringing marks.

17.    The consent judgment ████████████████ further prohibited ICC from continuing to represent that its product contained Teflon because there was no dispute that in fact it did not.

## II.    ICC's violation of the consent judgment and breach of the settlement agreement

18.    ICC represented that after execution of the settlement agreement and entry of the consent judgment, it switched all of its conveyor lubricant customers over to the brush application method ████████████████.

19.    However, beginning at least as early as 2016, at least three Ecolab Account Managers responsible for various Nestle Waters bottling plants in Texas observed that silicone lubricants, provided by ICC under the names DRY TRAC and DRY TRAC ICE, were being applied through non-energized nozzles to the container-contacting surface of the conveyor belt.

20.    In at least some cases, the DRY TRAC or DRY TRAC ICE product was applied through the same spray lines that had been installed by Ecolab for application of Ecolab's competitive silicone lubricant offering—DryExx®. Upon employing the ICC product on the line, personnel associated with ICC changed out some of the internal components of some of the nozzles—replacing the check valve and screen with a small metal or plastic disc—but otherwise left the existing spray nozzle equipment in place.

21.    Both DRY TRAC and DRY TRAC ICE are silicone lubricants as defined by the consent judgment.

22.     ICC's provision of the DRY TRAC and DRY TRAC ICE lubricants to bottling plants for application to the container-contacting surface of conveyors through non-energized nozzles constitutes a violation of the consent judgment and a breach of the parties' settlement agreement.

23.     Review of ICC's website revealed that ICC provided instructions and instructional videos for its DRY TRAC lubricants advising users to intermittently "spray" the lubricant onto conveyors at various intervals. A true and correct copy of a printout of an ICC webpage displaying such instructions is attached hereto as **Exhibit D.**

24.     ICC's website also linked to a video, hosted on youtube.com and posted by ICC, discussing use of a "Smart Relay Program" in connection with ICC's silicone lubricant. The video can be found at https://www.youtube.com/watch?v=gjWBnDlB4Ps&t=17s. This promotional video clearly uses "Dry Traxx" when referencing the lubricant in violation of the provision of the consent judgment that requires ICC to refrain from using any mark that "ends in the suffix –XX, or any derivative thereof, on or in connection with any product; as a business name, trade name, or other designation to indicate source; or on any . . . website, online advertisement, . . . promotional material, [or] promotional communication . . . ."

### III.    Ecolab's communications with ICC regarding recent violations

25.     Upon learning of ICC's violations of the consent judgment and breaches of the settlement agreement, counsel for Ecolab wrote to ICC to address Ecolab's concerns that ICC had acted in a manner that violated the consent judgment at least by (1) providing silicone lubricants to plants that applied the lubricants by intermittent spraying through non-energized nozzles and (2) instructing users of its silicone lubricants to apply those lubricants to conveyors by intermittently spraying. A copy of the letter sent to ICC is attached hereto as **Exhibit E.**

26.     In response to this letter, ICC's principal, Robert Catroneo, Jr., acknowledged that ICC had installed lubricant systems without brushes in some bottling plants, but described the plastic and metal discs present in the nozzles in those plants as "orifice reduction plates" that dispense the lube in a stream, not a spray. A copy of this responsive email is attached hereto as **Exhibit F**.

27.     Despite Mr. Catroneo's effort to rename the ICC nozzles as "orifice reduction plates," the application system used by ICC for its DRY TRAC and DRY TRAC ICE products used non-energized nozzles. Nothing ███████████████████████████ in the Consent Judgment limited the definition of non-energized nozzles in any way that would exclude a nozzle employing an orifice reduction plate.

28.     ████████████████████████████████████████
████████████████████████████████████████
██████████████████████████

29.     ███████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████

30.     ICC's use of non-energized nozzles to apply its DRY TRAC and DRY TRAC ICE silicone lubricants is a breach of the parties Settlement Agreement, giving rise to claims for breach of contract as set forth herein.

31.     Additionally, and in the alternative, ICC's use of non-energized nozzles to apply its DRY TRAC and DRY TRAC ICE silicone lubricants is a material breach of the parties

Settlement Agreement, which voids any covenant or release as to the patents asserted in the prior litigation, and gives rise to claims for infringement of those patents as set forth herein.

**IV.**   **Ecolab's U.S. Patent Nos. 7,741,257; 7,745,381; 8,058,215; 8,211,838; 8,216,984; 8,455,409; and 8,765,648.**

32.     On June 22, 2010, United States Patent No. 7,741,257 B2 (hereinafter "the '257 patent") entitled DRY LUBRICANT FOR CONVEYING CONTAINERS was duly and legally issued to Ecolab Inc. as assignee. Ecolab USA Inc. is the owner of all right, title, and interest in the '257 patent. A copy of the '257 patent is attached hereto as **Exhibit G.**

33.     On June 29, 2010, United States Patent No. 7,745,381 B2 (hereinafter "the '381 patent") entitled LUBRICANT FOR CONVEYING CONTAINERS was duly and legally issued to Ecolab Inc. as assignee. Ecolab USA Inc. is the owner of all right, title, and interest in the '381 patent. A copy of the '381 patent is attached hereto as **Exhibit H.**

34.     On November 15, 2011, United States Patent No. 8,058,215 B2 (hereinafter "the '215 patent") entitled DRY LUBRICANT FOR CONVEYING CONTAINERS was duly and legally issued to Ecolab USA Inc. as assignee; and since that date Ecolab USA Inc. has been, and still is, the owner of all right, title, and interest in the '215 patent. A copy of the '215 patent is attached hereto as **Exhibit I**.

35.     On June 3, 2012, United States Patent No. 8,211,838 B2 (hereinafter "the '838 patent") entitled LUBRICANT FOR CONVEYING CONTAINERS was duly and legally issued to Ecolab USA Inc. as assignee; and since that date Ecolab USA Inc. has been, and still is, the owner of all right, title, and interest in the '838 patent. A copy of the '838 patent is attached hereto as **Exhibit J**.

36.     On July 10, 2012, United States Patent No. 8,216,984 (hereinafter "the '984 patent") entitled DRY LUBRICANT FOR CONVEYING CONTAINERS was duly and legally

issued to Ecolab USA Inc. as assignee; and since that date Ecolab USA Inc. has been, and still is, the owner of all right, title, and interest in the '984 patent. A copy of the '984 patent is attached hereto as **Exhibit K**.

37.    On June 4, 2013, United States Patent No. 8,455,409 B2 (hereinafter "the '409 patent") entitled DRY LUBRICANT FOR CONVEYING CONTAINERS was duly and legally issued to Ecolab USA Inc. as assignee; and since that date Ecolab USA Inc. has been, and still is, the owner of all right, title, and interest in the '409 patent. A copy of the '409 patent is attached hereto as **Exhibit L**.

38.    On July 1, 2014, United States Patent No. 8,765,648 B2 (hereinafter "the '648 patent") entitled DRY LUBRICANT FOR CONVEYING CONTAINERS was duly and legally issued to Ecolab USA Inc. as assignee; and since that date Ecolab USA Inc. has been, and still is, the owner of all right, title, and interest in the '648 patent. A copy of the '648 patent is attached hereto as **Exhibit M**.

## <u>COUNT I – BREACH OF CONTRACT</u>

39.    Ecolab restates the allegations set forth in paragraphs 1-38 and incorporates them herein by reference.

40.    Ecolab and ICC entered into a valid contract, the Settlement Agreement attached as Exhibit C, on or around March 9, 2012.

41.    The parties' Settlement Agreement ███████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████

42.    ICC has breached the Settlement Agreement at least by intermittently spraying and/or instructing customers to intermittently spray ICC's DRY TRAC and/or DRY TRAC ICE

products through non-energized nozzles onto a container-contacting surface of a conveyor chain at bottling plants beginning at least as early as 2016.

43.    ICC's breach of the Settlement Agreement has actually injured Ecolab in an amount to be determined at trial by *inter alia* interfering with Ecolab's ability to sell conveyor lubricants at bottling plants where infringement occurred.

44.    By reason of ICC's breach, Ecolab is entitled to recover actual damages.

## **COUNT II - INFRINGEMENT OF U.S. PATENT NO. 7,741,257**

45.    Ecolab restates the allegations set forth in paragraphs 1-44 and incorporates them herein by reference.

46.    ICC has infringed one or more of the claims of the '257 patent, including at least claim 41, by making, using, selling, and/or offering for sale its DRY TRAC and DRY TRAC ICE conveyor lubricants. ICC has used its DRY TRAC and DRY TRAC ICE conveyor lubricants in a method that embodies the invention of one or more claims of the '257 patent, including at least claim 41.

47.    ICC also has contributed to the infringement of the '257 patent by selling and offering for sale its DRY TRAC and DRY TRAC ICE conveyor lubricants.

48.    ICC's DRY TRAC and DRY TRAC ICE conveyor lubricants comprise material parts of the claimed invention of the '257 patent, are not staple articles of commerce, and have no substantial noninfringing use. When used with ICC's recommended dispensing equipment, the use of DRY TRAC and DRY TRAC ICE conveyor lubricants infringes the '257 patent.

49.    Upon information and belief, ICC is aware of the '257 patent, has been aware of the '257 patent during the period of infringement, and knowingly made the DRY TRAC and DRY TRAC ICE conveyor lubricants for use in the process that is claimed in the '257 patent.

50.    ICC's customers—namely, the bottling facilities that purchase the DRY TRAC and DRY TRAC ICE conveyor lubricants from ICC—directly infringed the '257 patent by using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that embodies the invention of the '257 patent. Upon information and belief, ICC knows that its customers used, and indeed instructed its customers to use, the DRY TRAC and DRY TRAC ICE conveyor lubricants in a manner that infringes the '257 patent.

51.    ICC also has induced infringement of the '257 patent by selling its DRY TRAC and DRY TRAC ICE conveyor lubricants to bottling facilities. ICC has instructed those facilities to use the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that infringes the '257 patent. ICC also has assisted those facilities in using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that infringes the '257 patent.

52.    Upon information and belief, ICC is and has been aware of the '257 patent and knows that its sale of the DRY TRAC and DRY TRAC ICE conveyor lubricants and instructions for use of the same, induced ICC's customers to directly infringe the '257 patent. ICC's knowledge of the '257 patent, combined with ICC's instructions for use of the DRY TRAC and DRY TRAC ICE conveyor lubricants in the manner specified by the '257 patent, demonstrate that ICC intended to induce its customers to infringe the '257 patent.

53.    When using the DRY TRAC and DRY TRAC ICE conveyor lubricants as directed by ICC's customers—namely, the bottling facilities that purchase the DRY TRAC and DRY TRAC ICE conveyor lubricants from ICC—directly infringed the '257 patent by using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that embodies the invention of the '257 patent.

54.     Ecolab has been damaged by ICC's infringement of the '257 patent in an amount to be proven at trial.

55.     ICC is and has been aware that the '257 patent was duly and legally issued and that ICC's use, manufacture, sale, and/or offer for sale of the DRY TRAC and DRY TRAC ICE conveyor lubricant infringed said patent, and contributed to and induced the infringement of said patent by others. Indeed, ICC admitted in the Settlement Agreement that the '257 patent is "valid and enforceable in all respects."

56.     ICC's infringement of said patent has been willful, intentional, and in violation of a Court Order.

57.     For the reasons set forth herein, Ecolab is entitled to recover actual damages, treble damages, attorneys' fees, and the costs of this litigation pursuant to 35 U.S.C. §§ 284 & 285.

## COUNT III - INFRINGEMENT OF U.S. PATENT NO. 7,745,381

58.     Ecolab restates the allegations set forth in paragraphs 1-57 and incorporates them herein by reference.

59.     ICC has infringed one or more of the claims of the '381 patent, including at least claim 1, by making, using, selling, and/or offering for sale its DRY TRAC and DRY TRAC ICE conveyor lubricants. ICC has used its DRY TRAC and DRY TRAC ICE conveyor lubricants in a method that embodies the invention of one or more claims of the '381 patent, including at least claim 1.

60.     ICC also has contributed to the infringement of the '381 patent by selling and offering for sale its DRY TRAC and DRY TRAC ICE conveyor lubricants.

61.     ICC's DRY TRAC and DRY TRAC ICE conveyor lubricants comprise material parts of the claimed invention of the '381 patent, are not staple articles of commerce, and have

no substantial noninfringing use. When used with ICC's recommended dispensing equipment, the use of DRY TRAC and DRY TRAC ICE conveyor lubricants infringes the '381 patent.

62.    Upon information and belief, ICC is aware of the '381 patent, has been aware of the '381 patent during the period of infringement, and knowingly made the DRY TRAC and DRY TRAC ICE conveyor lubricants for use in the process that is claimed in the '381 patent.

63.    ICC's customers—namely, the bottling facilities that purchase the DRY TRAC and DRY TRAC ICE conveyor lubricants from ICC—directly infringed the '381 patent by using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that embodies the invention of the '381 patent. Upon information and belief, ICC knows that its customers used, and indeed instructed its customers to use, the DRY TRAC and DRY TRAC ICE conveyor lubricants in a manner that infringes the '381 patent.

64.    ICC also has induced infringement of the '381 patent by selling its DRY TRAC and DRY TRAC ICE conveyor lubricants to bottling facilities. ICC has instructed those facilities to use the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that infringes the '381 patent. ICC also has assisted those facilities in using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that infringes the '381 patent.

65.    Upon information and belief, ICC is and has been aware of the '381 patent and knows that its sale of the DRY TRAC and DRY TRAC ICE conveyor lubricants and instructions for use of the same, induced ICC's customers to directly infringe the '381 patent. ICC's knowledge of the '381 patent, combined with ICC's instructions for use of the DRY TRAC and DRY TRAC ICE conveyor lubricants in the manner specified by the '381 patent, demonstrate that ICC intended to induce its customers to infringe the '381 patent.

66.    When using the DRY TRAC and DRY TRAC ICE conveyor lubricants as directed by ICC's customers—namely, the bottling facilities that purchase the DRY TRAC and DRY TRAC ICE conveyor lubricants from ICC—directly infringed the '381 patent by using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that embodies the invention of the '381 patent.

67.    Ecolab has been damaged by ICC's infringement of the '381 patent in an amount to be proven at trial.

68.    ICC is and has been aware that the '381 patent was duly and legally issued and that ICC's use, manufacture, sale, and/or offer for sale of the DRY TRAC and DRY TRAC ICE conveyor lubricant infringed said patent, and contributed to and induced the infringement of said patent by others. Indeed, ICC admitted in the Settlement Agreement that the '381 patent is "valid and enforceable in all respects."

69.    ICC's infringement of said patent has been willful, intentional, and in violation of a Court Order.

70.    For the reasons set forth herein, Ecolab is entitled to recover actual damages, treble damages, attorneys' fees, and the costs of this litigation pursuant to 35 U.S.C. §§ 284 & 285.

## COUNT IV - INFRINGEMENT OF U.S. PATENT NO. 8,058,215

71.    Ecolab restates the allegations set forth in paragraphs 1-70 and incorporates them herein by reference.

72.    ICC has infringed one or more of the claims of the '215 patent, including at least claim 1, by making, using, selling, and/or offering for sale its DRY TRAC and DRY TRAC ICE conveyor lubricants. ICC has used its DRY TRAC and DRY TRAC ICE conveyor lubricants in a

method that embodies the invention of one or more claims of the '215 patent, including at least claim 1.

73.     ICC also has contributed to the infringement of the '215 patent by selling and offering for sale its DRY TRAC and DRY TRAC ICE conveyor lubricants.

74.     ICC's DRY TRAC and DRY TRAC ICE conveyor lubricants comprise material parts of the claimed invention of the '215 patent, are not staple articles of commerce, and have no substantial noninfringing use. When used with ICC's recommended dispensing equipment, the use of DRY TRAC and DRY TRAC ICE conveyor lubricants infringes the '215 patent.

75.     Upon information and belief, ICC is aware of the '215 patent, has been aware of the '215 patent during the period of infringement, and knowingly made the DRY TRAC and DRY TRAC ICE conveyor lubricants for use in the process that is claimed in the '215 patent.

76.     ICC's customers—namely, the bottling facilities that purchase the DRY TRAC and DRY TRAC ICE conveyor lubricants from ICC—directly infringed the '215 patent by using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that embodies the invention of the '215 patent. Upon information and belief, ICC knows that its customers used, and indeed instructed its customers to use, the DRY TRAC and DRY TRAC ICE conveyor lubricants in a manner that infringes the '215 patent.

77.     ICC also has induced infringement of the '215 patent by selling its DRY TRAC and DRY TRAC ICE conveyor lubricants to bottling facilities. ICC has instructed those facilities to use the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that infringes the '215 patent. ICC also has assisted those facilities in using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that infringes the '215 patent.

78.    Upon information and belief, ICC is and has been aware of the '215 patent and knows that its sale of the DRY TRAC and DRY TRAC ICE conveyor lubricants and instructions for use of the same, induced ICC's customers to directly infringe the '215 patent. ICC's knowledge of the '215 patent, combined with ICC's instructions for use of the DRY TRAC and DRY TRAC ICE conveyor lubricants in the manner specified by the '215 patent, demonstrate that ICC intended to induce its customers to infringe the '215 patent.

79.    When using the DRY TRAC and DRY TRAC ICE conveyor lubricants as directed by ICC's customers—namely, the bottling facilities that purchase the DRY TRAC and DRY TRAC ICE conveyor lubricants from ICC—directly infringed the '215 patent by using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that embodies the invention of the '215 patent.

80.    Ecolab has been damaged by ICC's infringement of the '215 patent in an amount to be proven at trial.

81.    ICC is and has been aware that the '215 patent was duly and legally issued and that ICC's use, manufacture, sale, and/or offer for sale of the DRY TRAC and DRY TRAC ICE conveyor lubricant infringed said patent, and contributed to and induced the infringement of said patent by others. Indeed, ICC admitted in the Settlement Agreement that the '215 patent is "valid and enforceable in all respects."

82.    ICC's infringement of said patent has been willful, intentional, and in violation of a Court Order.

83.    For the reasons set forth herein, Ecolab is entitled to recover actual damages, treble damages, attorneys' fees, and the costs of this litigation pursuant to 35 U.S.C. §§ 284 & 285.

## <u>COUNT V - INFRINGEMENT OF U.S. PATENT NO. 8,211,838</u>

84.    Ecolab restates the allegations set forth in paragraphs 1-83 and incorporates them herein by reference.

85.    ICC has infringed one or more of the claims of the '838 patent, including at least claim 1, by making, using, selling, and/or offering for sale its DRY TRAC and DRY TRAC ICE conveyor lubricants. ICC has used its DRY TRAC and DRY TRAC ICE conveyor lubricants in a method that embodies the invention of one or more claims of the '838 patent, including at least claim 1.

86.    ICC also has contributed to the infringement of the '838 patent by selling and offering for sale its DRY TRAC and DRY TRAC ICE conveyor lubricants.

87.    ICC's DRY TRAC and DRY TRAC ICE conveyor lubricants comprise material parts of the claimed invention of the '838 patent, are not staple articles of commerce, and have no substantial noninfringing use. When used with ICC's recommended dispensing equipment, the use of DRY TRAC and DRY TRAC ICE conveyor lubricants infringes the '838 patent.

88.    Upon information and belief, ICC is aware of the '838 patent, has been aware of the '838 patent during the period of infringement, and knowingly made the DRY TRAC and DRY TRAC ICE conveyor lubricants for use in the process that is claimed in the '838 patent.

89.    ICC's customers—namely, the bottling facilities that purchase the DRY TRAC and DRY TRAC ICE conveyor lubricants from ICC—directly infringed the '838 patent by using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that embodies the invention of the '838 patent. Upon information and belief, ICC knows that its customers used, and indeed instructed its customers to use, the DRY TRAC and DRY TRAC ICE conveyor lubricants in a manner that infringes the '838 patent.

90.     ICC also has induced infringement of the '838 patent by selling its DRY TRAC and DRY TRAC ICE conveyor lubricants to bottling facilities. ICC has instructed those facilities to use the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that infringes the '838 patent. ICC also has assisted those facilities in using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that infringes the '838 patent.

91.     Upon information and belief, ICC is and has been aware of the '838 patent and knows that its sale of the DRY TRAC and DRY TRAC ICE conveyor lubricants and instructions for use of the same, induced ICC's customers to directly infringe the '838 patent. ICC's knowledge of the '838 patent, combined with ICC's instructions for use of the DRY TRAC and DRY TRAC ICE conveyor lubricants in the manner specified by the '838 patent, demonstrate that ICC intended to induce its customers to infringe the '838 patent.

92.     When using the DRY TRAC and DRY TRAC ICE conveyor lubricants as directed by ICC's customers—namely, the bottling facilities that purchase the DRY TRAC and DRY TRAC ICE conveyor lubricants from ICC—directly infringed the '838 patent by using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that embodies the invention of the '838 patent.

93.     Ecolab has been damaged by ICC's infringement of the '838 patent in an amount to be proven at trial.

94.     ICC is and has been aware that the '838 patent was duly and legally issued and that ICC's use, manufacture, sale, and/or offer for sale of the DRY TRAC and DRY TRAC ICE conveyor lubricant infringed said patent, and contributed to and induced the infringement of said patent by others.

95.     ICC's infringement of said patent has been willful.

96.     For the reasons set forth herein, Ecolab is entitled to recover actual damages, treble damages, attorneys' fees, and the costs of this litigation pursuant to 35 U.S.C. §§ 284 & 285.

### COUNT VI - INFRINGEMENT OF U.S. PATENT NO. 8,216,984

97.     Ecolab restates the allegations set forth in paragraphs 1-96 and incorporates them herein by reference.

98.     ICC has infringed one or more of the claims of the '984 patent, including at least claim 1, by making, using, selling, and/or offering for sale its DRY TRAC and DRY TRAC ICE conveyor lubricants. ICC has used its DRY TRAC and DRY TRAC ICE conveyor lubricants in a method that embodies the invention of one or more claims of the '984 patent, including at least claim 1.

99.     ICC also has contributed to the infringement of the '984 patent by selling and offering for sale its DRY TRAC and DRY TRAC ICE conveyor lubricants.

100.    ICC's DRY TRAC and DRY TRAC ICE conveyor lubricants comprise material parts of the claimed invention of the '984 patent, are not staple articles of commerce, and have no substantial noninfringing use. When used with ICC's recommended dispensing equipment, the use of DRY TRAC and DRY TRAC ICE conveyor lubricants infringes the '984 patent.

101.    Upon information and belief, ICC is aware of the '984 patent, has been aware of the '984 patent during the period of infringement, and knowingly made the DRY TRAC and DRY TRAC ICE conveyor lubricants for use in the process that is claimed in the '984 patent.

102.    ICC's customers—namely, the bottling facilities that purchase the DRY TRAC and DRY TRAC ICE conveyor lubricants from ICC—directly infringed the '984 patent by using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that embodies the invention of the '984 patent. Upon information and belief, ICC knows that its customers used,

and indeed instructed its customers to use, the DRY TRAC and DRY TRAC ICE conveyor lubricants in a manner that infringes the '984 patent.

103.    ICC also has induced infringement of the '984 patent by selling its DRY TRAC and DRY TRAC ICE conveyor lubricants to bottling facilities. ICC has instructed those facilities to use the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that infringes the '984 patent. ICC also has assisted those facilities in using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that infringes the '984 patent.

104.    Upon information and belief, ICC is and has been aware of the '984 patent and knows that its sale of the DRY TRAC and DRY TRAC ICE conveyor lubricants and instructions for use of the same, induced ICC's customers to directly infringe the '984 patent. ICC's knowledge of the '984 patent, combined with ICC's instructions for use of the DRY TRAC and DRY TRAC ICE conveyor lubricants in the manner specified by the '984 patent, demonstrate that ICC intended to induce its customers to infringe the '984 patent.

105.    When using the DRY TRAC and DRY TRAC ICE conveyor lubricants as directed by ICC's customers—namely, the bottling facilities that purchase the DRY TRAC and DRY TRAC ICE conveyor lubricants from ICC—directly infringed the '984 patent by using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that embodies the invention of the '984 patent.

106.    Ecolab has been damaged by ICC's infringement of the '984 patent in an amount to be proven at trial.

107.    ICC is and has been aware that the '984 patent was duly and legally issued and that ICC's use, manufacture, sale, and/or offer for sale of the DRY TRAC and DRY TRAC ICE

conveyor lubricant infringed said patent, and contributed to and induced the infringement of said patent by others.

108.    ICC's infringement of said patent has been willful.

109.    For the reasons set forth herein, Ecolab is entitled to recover actual damages, treble damages, attorneys' fees, and the costs of this litigation pursuant to 35 U.S.C. §§ 284 & 285.

## COUNT VII - INFRINGEMENT OF U.S. PATENT NO. 8,455,409

110.    Ecolab restates the allegations set forth in paragraphs 1-109 and incorporates them herein by reference.

111.    ICC has infringed one or more of the claims of the '409 patent, including at least claim 1, by making, using, selling, and/or offering for sale its DRY TRAC and DRY TRAC ICE conveyor lubricants. ICC has used its DRY TRAC and DRY TRAC ICE conveyor lubricants in a method that embodies the invention of one or more claims of the '409 patent, including at least claim 1.

112.    ICC also has contributed to the infringement of the '409 patent by selling and offering for sale its DRY TRAC and DRY TRAC ICE conveyor lubricants.

113.    ICC's DRY TRAC and DRY TRAC ICE conveyor lubricants comprise material parts of the claimed invention of the '409 patent, are not staple articles of commerce, and have no substantial noninfringing use. When used with ICC's recommended dispensing equipment, the use of DRY TRAC and DRY TRAC ICE conveyor lubricants infringes the '409 patent.

114.    Upon information and belief, ICC is aware of the '409 patent, has been aware of the '409 patent during the period of infringement, and knowingly made the DRY TRAC and DRY TRAC ICE conveyor lubricants for use in the process that is claimed in the '409 patent.

115. ICC's customers—namely, the bottling facilities that purchase the DRY TRAC and DRY TRAC ICE conveyor lubricants from ICC—directly infringed the '409 patent by using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that embodies the invention of the '409 patent. Upon information and belief, ICC knows that its customers used, and indeed instructed its customers to use, the DRY TRAC and DRY TRAC ICE conveyor lubricants in a manner that infringes the '409 patent.

116. ICC also has induced infringement of the '409 patent by selling its DRY TRAC and DRY TRAC ICE conveyor lubricants to bottling facilities. ICC has instructed those facilities to use the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that infringes the '409 patent. ICC also has assisted those facilities in using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that infringes the '409 patent.

117. Upon information and belief, ICC is and has been aware of the '409 patent and knows that its sale of the DRY TRAC and DRY TRAC ICE conveyor lubricants and instructions for use of the same, induced ICC's customers to directly infringe the '409 patent. ICC's knowledge of the '409 patent, combined with ICC's instructions for use of the DRY TRAC and DRY TRAC ICE conveyor lubricants in the manner specified by the '409 patent, demonstrate that ICC intended to induce its customers to infringe the '409 patent.

118. When using the DRY TRAC and DRY TRAC ICE conveyor lubricants as directed by ICC's customers—namely, the bottling facilities that purchase the DRY TRAC and DRY TRAC ICE conveyor lubricants from ICC—directly infringed the '409 patent by using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that embodies the invention of the '409 patent.

119.    Ecolab has been damaged by ICC's infringement of the '409 patent in an amount to be proven at trial.

120.    ICC is and has been aware that the '409 patent was duly and legally issued and that ICC's use, manufacture, sale, and/or offer for sale of the DRY TRAC and DRY TRAC ICE conveyor lubricant infringed said patent, and contributed to and induced the infringement of said patent by others.

121.    ICC's infringement of said patent has been willful.

122.    For the reasons set forth herein, Ecolab is entitled to recover actual damages, treble damages, attorneys' fees, and the costs of this litigation pursuant to 35 U.S.C. §§ 284 & 285.

## COUNT VIII - INFRINGEMENT OF U.S. PATENT NO. 8,765,648

123.    Ecolab restates the allegations set forth in paragraphs 1-122 and incorporates them herein by reference.

124.    ICC has infringed one or more of the claims of the '648 patent, including at least claim 1, by making, using, selling, and/or offering for sale its DRY TRAC and DRY TRAC ICE conveyor lubricants. ICC has used its DRY TRAC and DRY TRAC ICE conveyor lubricants in a method that embodies the invention of one or more claims of the '648 patent, including at least claim 1.

125.    ICC also has contributed to the infringement of the '648 patent by selling and offering for sale its DRY TRAC and DRY TRAC ICE conveyor lubricants.

126.    ICC's DRY TRAC and DRY TRAC ICE conveyor lubricants comprise material parts of the claimed invention of the '648 patent, are not staple articles of commerce, and have no substantial noninfringing use. When used with ICC's recommended dispensing equipment, the use of DRY TRAC and DRY TRAC ICE conveyor lubricants infringes the '648 patent.

127.   Upon information and belief, ICC is aware of the '648 patent, has been aware of the '648 patent during the period of infringement, and knowingly made the DRY TRAC and DRY TRAC ICE conveyor lubricants for use in the process that is claimed in the '648 patent.

128.   ICC's customers—namely, the bottling facilities that purchase the DRY TRAC and DRY TRAC ICE conveyor lubricants from ICC—directly infringed the '648 patent by using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that embodies the invention of the '648 patent. Upon information and belief, ICC knows that its customers used, and indeed instructed its customers to use, the DRY TRAC and DRY TRAC ICE conveyor lubricants in a manner that infringes the '648 patent.

129.   ICC also has induced infringement of the '648 patent by selling its DRY TRAC and DRY TRAC ICE conveyor lubricants to bottling facilities. ICC has instructed those facilities to use the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that infringes the '648 patent. ICC also has assisted those facilities in using the DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that infringes the '648 patent.

130.   Upon information and belief, ICC is and has been aware of the '648 patent and knows that its sale of the DRY TRAC and DRY TRAC ICE conveyor lubricants and instructions for use of the same, induced ICC's customers to directly infringe the '648 patent. ICC's knowledge of the '648 patent, combined with ICC's instructions for use of the DRY TRAC and DRY TRAC ICE conveyor lubricants in the manner specified by the '648 patent, demonstrate that ICC intended to induce its customers to infringe the '648 patent.

131.   When using the DRY TRAC and DRY TRAC ICE conveyor lubricants as directed by ICC's customers—namely, the bottling facilities that purchase the DRY TRAC and DRY TRAC ICE conveyor lubricants from ICC—directly infringed the '648 patent by using the

DRY TRAC and DRY TRAC ICE conveyor lubricants in a process that embodies the invention of the '648 patent.

132.    Ecolab has been damaged by ICC's infringement of the '648 patent in an amount to be proven at trial.

133.    ICC is and has been aware that the '648 patent was duly and legally issued and that ICC's use, manufacture, sale, and/or offer for sale of the DRY TRAC and DRY TRAC ICE conveyor lubricant infringed said patent, and contributed to and induced the infringement of said patent by others.

134.    ICC's infringement of said patent has been willful.

135.    For the reasons set forth herein, Ecolab is entitled to recover actual damages, treble damages, attorneys' fees, and the costs of this litigation pursuant to 35 U.S.C. §§ 284 & 285.

## COUNT IX – TRADEMARK INFRINGEMENT

136.    Ecolab restates the allegations set forth in paragraphs 1-135 and incorporates them herein by reference.

137.    For many years, Ecolab has been using a family of trademarks that end in the suffix "XX" in connection with products marketed and sold to the food and beverage industry.

138.    Ecolab owns many United States trademark registrations using the XX suffix, including DRYEXX (Reg. No. 3,353,803), INSPEXX (Reg. No. 2,756,266), MATRIXX (Reg. No. 2,182,946), and QUADEXX (Reg. No. 2,819,670). In addition, Ecolab owns common law rights in the marks FILMAXX, VORTEXX, and SERVICECHEXX for products marketed and sold to the food and beverage industry. The above marks will be collectively referred to herein as

the "Family of XX Marks." Copies of the registrations for the Family of XX Marks are attached hereto as **Exhibits N-Q**.

139.    The above registrations are valid, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065, and are therefore conclusive evidence of the validity of the registered marks, of Ecolab's ownership of the marks, and of Ecolab's exclusive right to use the registered marks in commerce in accordance with 15 U.S.C. § 1115.

140.    Ecolab has advertised and sold products for use in food and beverage plants under the Family of XX Marks. Because of Ecolab's exclusive and extensive use of the Family of XX Marks, the marks have acquired considerable value and have become well known among the consuming public and trade as identifying and distinguishing Ecolab as the source of the products sold under the marks.

141.    ICC has continued to use trademarks that are confusingly similar to Ecolab's Family of XX Marks, for related products sold to the same purchasers and class of purchasers, namely, food and beverage processing plants, without consent from Ecolab.

142.    For example, Defendant has continued using the mark DRY TRAXX for a synthetic chain lubricant for conveyor systems on a video hosted on the website youtube.com, and placed there by Defendant. This mark is confusingly similar to Ecolab's Family of XX Marks.

143.    ICC knew of Ecolab's Family of XX Marks before it began using the DRY TRAXX mark for its own products directed to the same consumers.

144.    ICC is using in commerce, and continues to use in commerce, a mark that is confusingly similar to Ecolab's Family of XX Marks in connection with the advertising, promotion, and/or sale of goods related to those of Ecolab, without the consent of Ecolab, and in

a manner that is likely to cause confusion, to cause mistake, or to deceive as to source or origin among purchasers and/or users of such goods.

145.    ICC's actions constitute trademark infringement under 15 U.S.C. § 1114.

146.    ICC's actions were taken in willful, deliberate, and/or intentional disregard of Ecolab's rights. This case is exceptional under 15 U.S.C. §§ 1051 *et seq.*

147.    Ecolab has been damaged by the acts of ICC. Ecolab has suffered, and if the acts of ICC are allowed to continue, will continue to suffer, irreparable injury for which Ecolab has no adequate remedy at law.

148.    By reason of ICC's bad faith and willful infringement, Ecolab is entitled to recover actual damages, treble damages, an accounting of ICC's profits, attorneys' fees, and the costs of this litigation pursuant to 15 U.S.C. § 1117 and injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT X – FEDERAL UNFAIR COMPETITION

149.    Ecolab restates the allegations set forth in paragraphs 1-148 and incorporates them herein by reference.

150.    ICC was aware of Ecolab's Family of XX Marks before adopting the DRY TRAXX mark for its products. Despite such awareness, ICC adopted and used a confusingly similar mark for closely related products directed to the same customers.

151.    ICC's adoption of the DRY TRAXX mark was made with the intent to trade on the goodwill associated with Ecolab's Family of XX Marks.

152.    ICC used, on or in connection with goods, a mark that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of

ICC with Ecolab, or as to the origin, sponsorship, or approval of ICC's goods, or commercial activities, by Ecolab.

153.    ICC's acts constitute a false designation of origin and misrepresentation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

154.    ICC's actions were taken in willful, deliberate, and/or intentional disregard of Ecolab's rights. This case is exceptional under 15 U.S.C. §§ 1051 *et seq.*

155.    Ecolab has been damaged by the acts of ICC. Ecolab has suffered, and if the acts of ICC are allowed to continue, will continue to suffer, irreparable injury for which Ecolab has no adequate remedy at law.

156.    Ecolab is entitled to recover actual and treble damages, attorneys' fees, and the costs of this litigation pursuant to 15 U.S.C. § 1117 and injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT XI – VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR PRACTICES ACT

157.    Ecolab restates the allegations set forth in paragraphs 1-156 and incorporates them herein by reference.

158.    Ecolab owns federal and common law trademark rights in its Family of XX Marks for use in connection with products marketed and sold to the food and beverage industry.

159.    ICC's use of the confusingly similar mark DRY TRAXX in connection with products that are closely related to Ecolab's products to the same customers or set of customers constitutes unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of its trade and in commerce in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-213.

160.    ICC's actions were taken in willful, deliberate, and/or intentional disregard of Ecolab's rights.

161.    Ecolab has been damaged by the acts of ICC. Ecolab has suffered, and if the acts of ICC are allowed to continue, will continue to suffer, irreparable injury for which Ecolab has no adequate remedy at law.

162.    Ecolab is entitled to recover actual and punitive damages for ICC's deceptive and unfair trade practices.

## PRAYER FOR RELIEF

WHEREFORE, Ecolab prays for judgment that:

A.    United States Patent Nos. 7,741,257; 7,745,381; 8,058,215; 8,211,838; 8,216,984; 8,455,409; and 8,765,648 are valid and have been infringed by ICC;

B.    An accounting be had for the damages arising out of ICC's infringement of United States Patent Nos. 7,741,257; 7,745,381; 8,058,215; 8,211,838; 8,216,984; 8,455,409; and 8,765,648, including treble damages for willful infringement as provided by 35 U.S.C. § 284, with interest;

C.    Ecolab be awarded its attorneys' fees, costs, and expenses in this action;

D.    An accounting be had for the damages arising out of ICC's breach of the parties' Settlement Agreement, with interest;

E.    ICC be required to remove and delete the video found at https://www.youtube.com/watch?v=gjWBnDlB4Ps&t=17s from youtube.com, ICC's website, and any other locations it has been posted or published by ICC;

F.    ICC, its officers, agents, servants and employees, and those persons in active concert or participation with any of them be enjoined from using in any manner packaging, label, signs, literature, display cards, advertising, promotional materials or web sites bearing the DRY

TRAXX mark, or any other mark, word, or name confusingly similar to Ecolab's Family of XX Marks;

      G.      Ecolab be awarded treble damages and attorneys' fees for ICC's willful, deliberate, and intentional trademark infringement and unfair competition;

      H.      ICC acted in violation of the Florida Deceptive and Unfair Practices Act and awarding appropriate damages;

      I.      ICC's acts constitute unfair competition under the common law of the State of Florida and awarding appropriate damages; and

      F.      Ecolab be awarded such other and further relief as this Court may deem necessary and proper.

## <u>DEMAND FOR JURY TRIAL</u>

      Plaintiff hereby demands a trial by jury of all issues so triable.

      Respectfully submitted November  7 , 2018.

                     */s/ Brian R. Gilchrist*            
                     Brian R. Gilchrist
                     Florida Bar No. 774065
                     bgilchrist@allendyer.com
                     Ryan T. Santurri
                     Florida Bar No. 15698
                     rsanturri@allendyer.com
                     Allen, Dyer, Doppelt & Gilchrist P.A.
                     255 South Orange Avenue, Suite 1401
                     Orlando, FL  32801
                     Telephone: (407) 841-2330
                     Facsimile: (407) 841-2343
                     Attorneys for Plaintiff